UNITED STATES of America,
Plaintiff,

v.

Andres SALGADO–OCAMPO,
Defendant.

No. 97–239(2) (DSD/JMM).

United States District Court,
D. Minnesota.

June 16, 1999.

Daniel Martin Scott, Katherine Menendez, Federal Public Defender, Mpls, MN, for Andres Salgado–Ocampo, defendant.

R.J. Zayed, Assistant U.S. Attorney, Minneapolis, counsel for plaintiff.

**ORDER**

DOTY, District Judge.

This matter is before the court on a limited remand from the Eighth Circuit Court of Appeals for a determination of defendant's birth date and his status for purposes of the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 et. seq. Based on a review of the file, record, and all the evidence received at a hearing held on June 11, 1999, the court determines that defendant's date of birth is November 30, 1981.

## BACKGROUND

Defendant Andres Salgado Ocampo was found guilty by jury verdict on March 31, 1998, of Counts 1, 2, and 4 of the Superseding Indictment in this case, charging various drug trafficking offenses. Defendant was sentenced on July 14, 1998, to 78 months imprisonment and four years supervised release. Defendant then appealed his conviction and sentence to the Eighth Circuit Court of Appeals.

While his case was pending before the Eighth Circuit, defendant claimed for the first time that the date of birth he had provided to federal agents, the court, and the probation officer, November 30, 1978, was false. Defendant now claims his date of birth is November 30, 1981, and that this court had no jurisdiction to try him for the cocaine distribution offenses charged in the Second Superseding Indictment without following the procedures set forth in the Federal Juvenile Delinquency Act.

Because a factual dispute exists regarding defendant's date of birth, the Eighth Circuit remanded defendant's case for the limited purpose of conducting an evidentiary hearing to resolve the issue of defendant's age. The court held such a hearing on June 11, 1999, and issued a preliminary order on that date establishing defendant's date of birth as November 30, 1981.[1] This order will provide the reasons behind the court's determination.

## DISCUSSION

### A. Legal Standard

From the paucity of decisions dealing with a defendant who was assumed to be an adult but who later challenges this status, the court has determined the evidentiary standard which controls here. The initial burden of proving defendant's age falls on the government, which must offer prima facie evidence of defendant's adult status. If the government satisfies this burden, defendant must then come forward with evidence of his juvenile status. If the defendant comes forward with such evidence, the government has an opportunity to rebut with any additional information. *See U.S. v. Alvarez–Porras,* 643 F.2d 54, 66–67 (2nd Cir.1981), *cert. denied,* 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981) (agreeing with district court's determination that the government has the obligation of proving that a defendant is an adult, but if defendant does not offer verifiable personal data to determine his age the burden should fall on defendant to show his juvenile status). *See also U.S. v. Garcia–Flores,* 925 F.2d 1471 (9th Cir.1991) (unpublished opinion, text available at 1991 WL 17448); *State v. Sandomingo,* 39 Wash.App. 709, 695 P.2d 592, 594 (1985) ("[W]hen there is a reasonable basis for believing a defendant to be an adult, and the State has no means of verifying his claims, the defendant has the burden of proving his minority."). After receiving such evidence, the court must determine from the preponderance of the evidence the date on which defendant was born. *Garcia–Flores,* 1991 WL 17448 at \*3 (upholding trial court's decision concerning defendant's age under preponderance of evidence standard).

### B. Evidence Presented

At the outset, the court notes the impossibility of definitively determining defendant's date of birth. Evidence received at the hearing indicated that birth records in Amate Amarillo, Guerrero, Mexico, defendant's purported place of birth, are premature at best. Indeed, the evidence indicated that defendant's name could not be found in the written birth registry. As will be clear from the ensuing discussion, the lack of definitive proof has forced the

---

1. Because of the uncertainty surrounding defendant's status as an adult or juvenile, the Bureau of Prisons had been holding defendant in solitary confinement since January 1999, when the issue surrounding defendant's age first arose. The court was made aware of this situation at the hearing conducted on June 11, 1999, and issued its preliminary finding on that date so as to allow the United States Marshal Service and Bureau of Prisons to remove defendant from solitary confinement and place him in a juvenile facility.

court to examine, and in some cases rely on, evidence whose authenticity and reliability is not beyond reproach.

The court first finds that the government has offered prima facie evidence that defendant's date of birth is November 30, 1978, and that he should be considered an adult for purposes of this case. At the hearing, government witnesses testified that throughout the proceedings in this case defendant has asserted that his date of birth is November 30, 1978. Deputy United States Marshal John Dillon testified that at the time of defendant's arrest and booking defendant informed authorities that his date of birth was November 30, 1978. *See* Government Exhibit 7 (United States Marshal Service personal history for defendant, completed with information provided by defendant himself, showing his date of birth as "11/30/1978"). Special Agent Emilio Munoz of the Drug Enforcement Agency testified that he spoke with the defendant after his arrest, and when asked his date of birth for purposes of a "Personal History Report," defendant indicated his date of birth was "11–30–78." *See* Government Exhibit 2 (copy of personal history report for defendant). At his arraignment, defendant, when asked his age, indicated he was 18 years old. *See* Government Exhibit 6 at page 3. United States Probation Officer Joan White testified that when she interviewed defendant during the preparation of the presentence investigation report, defendant informed her that his date of birth was November 30, 1978.[2]

The government also offered a number of other exhibits showing that defendant's date of birth is November 30, 1978. A traffic ticket issued to defendant on March 21, 1997, shows defendant's date of birth as "11 30 78." *See* Government Exhibit 1. This is not surprising, however, given that defendant provided the Minnesota Department of Motor Vehicles with that same date of birth and it therefore appeared on

his Minnesota driver's license. *See* Government Exhibit 8 (applications made by defendant for a Minnesota Driver's License all showing date of birth as "11–30–78"). While defendant apparently provided a Mexican birth certificate as proof of age to the Department of Motor Vehicles, that birth certificate was not retained by the State of Minnesota.

The government has also offered proof of what it contends is the suspicious similarity of birth certificates of defendant, Carlos Alvear, and Eduardo Castillo, all of whom have recently come forward in separate cases arguing that they are in fact juveniles. The government has offered evidence that Castillo and Alvear were housed for a period at the Prairie Correctional Facility in Appleton, Minnesota at the same time, and that Alvear and Ocampo were housed for a different period at the Anoka County Jail at the same time. *See* Government Exhibit 9 (prisoner tracking records for defendant, Alvear, and Castillo) and Government Exhibit 10 (correspondence from the government of Mexico indicating that birth certificate proffered by Alvear was false). As the court has previously noted in ruling that Castillo was an adult, while there is no proof that any of these individuals know the others or that they had contact at these facilities, the possibility of subterfuge does exist.

In the face of this evidence, defendant has come forward with prima facie evidence that his date of birth is November 30, 1981, thereby making him a juvenile for purposes of these criminal proceedings. At the hearing, defendant called Ted Brown, an investigator with the Federal Public Defender's Office. Mr. Brown testified that in mid-May of this year he and a translator traveled to Guerrero state in Mexico in an attempt to determine defendant's true date of birth. Mr. Brown flew to Mexico City, then drove Southwest through Cuernavaca to Tenanguillo, a

---

**2.** When Ms. White attempted to corroborate defendant's date of birth with the Immigration and Naturalization Service, she was told

that no information on this individual was available.

small village in the mountains of Guerrero state. *See* Defendant's Exhibit G (a map of Guerrero state with the path of travel marked). Mr. Brown testified that defendant's family lives in a village named Amate Amarillo, an isolated village two hours further into the mountains from Tenanguillo. While in Tenanguillo, Mr. Brown met with defendant's mother, aunt, and the sheriff of Amate Amarillo, who had traveled from Amate Amarillo upon learning of Mr. Brown's impending visit.[3] *See* Defendant's Exhibit B (photos of those who met Mr. Brown and the building where the meeting took place).

Mr. Brown made a videotape of an interview conducted with defendant's mother, aunt, and the sheriff. *See* Defendant's Exhibit C (copy of videotape). During her interview, defendant's mother said that her son's date of birth was November 30, 1981. She also disclosed that she registered defendant's birth in Tenanguillo,[4] that defendant was baptized in Ixcapuzalco, and that defendant attended school through the fifth grade at the Vicente Guerrero school. Defendant's aunt, who lives with defendant's parents in Amate Amarillo, also disclosed during her interview that defendant's date of birth was November 30, 1981. The aunt also confirmed that defendant was baptized in Ixcapuzalco and that he attended school through the fifth grade at the Vicente Guerrero school. The sheriff indicated that he knew defendant and his family, but did not provide any other relevant information.

Defendant's mother also provided a number of documents to the Public Defender's Office. She first provided a copy of a birth certificate for the defendant.[5] *See* Government Exhibit 5 (copy of this birth certificate). The information contained in this birth certificate was provided by defendant's mother to a civil agent, who generated the requested birth certificate. Because, for whatever reason, defendant's birth was not recorded in the official registry, there is no basis for the information contained in the birth certificate provided other than defendant's mother's memory. This birth certificate lists defendant's birth date as November 30, 1981. After Mr. Brown's visit, defendant's family sent two additional documents to him, which were received on June 4, 1999. The first is a purported record of defendant's baptism. The record is from the Parish of St. Francis of Assisi in Ixcapuzalco, Guerrero, Mexico, and indicates that on January 6, 1982, a child by the name of Andres Salgado Ocampo was baptized in that parish, who had been born on November 30, 1981 in Amate Amarillo. The second is a school document from the Vicente Guerrero Elementary School which states that "[o]n the records of this institution for the school year 1992, there appears a record for the child Andres Salgado Ocampo, as having attended the fifth (5th) grade of elementary school." *See* Defendant's Exhibits E-env (envelope showing receipt date of June 4, 1999) E–1 (baptism record) and E–2 (school record).

3. Mr. Brown testified that a call had been placed to the one phone in Tenanguillo, requesting that word be passed to defendant's family that Mr. Brown would be visiting and that he would like to meet with them to discuss defendant's date of birth. The testimony of Mr. Brown concerning the difficult terrain traveled to reach Tenanguillo and the primitive conditions there partially explains the dearth of accurate records concerning defendant's birth. *See* Defendant's Exhibit A (pictures of the road traveled by Mr. Brown showing the primitive conditions).

4. The court does not know why defendant does not appear in the registry if defendant's mother did indeed register him.

5. It must be noted that defendant's mother did not proffer "the" birth certificate for defendant. The system for memorializing births in Guerrero is apparently much different than in this country. There, births are recorded in a registry, and when a birth certificate is needed, a civil official copies information from the registry onto a form. Each time a form is necessary, a new one is prepared. Thus, there is no "original" birth certificate for defendant as there would be if he had been born in the United States. Indeed, at least two birth certificates exist for defendant, bearing the same birth date, November 30, 1981, but differing in other minor details. *See* Government's Exhibits 3 and 5.

## C. Court's Determination

■ There is no doubt that defendant has consistently lied about his age. These lies either began several years ago when defendant entered this country illegally, or more recently after defendant's sentencing for the instant offense when he realized the advantages presented by his potential juvenile status. After hearing all of the evidence presented at the hearing and summarized above, the court concludes that a preponderance of the evidence supports the finding that defendant's recently asserted birth date of November 30, 1981, is indeed his true date of birth.

■ Although the exact date of defendant's arrival in this country is not known, when he arrived it is reasonable to conclude that he needed to find work, and lied about his age to do so. *See* Government Exhibit H (affidavit of Katherine Menendez, counsel for defendant, relating that defendant's mother told her that defendant claimed to be older when he came to the United States so that he could obtain employment).[6] To make himself older, defendant told others his date of birth was November 30, 1978, making him three years older than his actual age. It is also reasonable to conclude that once defendant established 1978 as his year of birth, he used this date consistently. Indeed, as summarized above, defendant related 1978 as his year of birth from the time of his arrival in this country through his arrest and the subsequent proceedings in this case. While the court can surmise why defendant maintained this deception, all of the government's evidence of defendant's date of birth flows from his initial lie upon entering the country. As pointed out by defense counsel, the fact that defendant has lied about his age in the past does not mean he is estopped from now claiming to be a juvenile.

The court is also not persuaded by the government's conspiracy evidence. While defendant, Alvear, and Castillo did have contact while in the custody of the Bureau of Prisons, and the Mexican government has attested to the falsity of the birth certificate offered by Alvear, no such information has been provided by the Mexican government regarding the birth certificate offered by defendant here. In fact, officials in Mexico have informed the Department of Justice that no documents have been found which would accredit the birth of defendant. *See* Government Exhibit 4. This is consistent with the evidence offered by defendant that his birth was never recorded in the official registry.

In relying on the information provided by defendant's family, the court is aware of reliability and credibility issues. As pointed out by the government, there is no way to confirm the mother or aunts' statements or authenticate the documents they provided. Indeed, the court is concerned by the fact that the baptism certificate was issued on May 23, 1999, and there is no indication an original was ever issued when defendant was baptized. The school record was issued "at the request of the interested party" on May 24, 1999. Thus, the possibility does exist that these documents were all generated in the hope of securing juvenile status for defendant.

However, the Mexican official in charge of the birth registry was willing to issue a birth certificate for November 30, 1981, based on what defendant's mother told him. He presumably would not have done so if defendant's birth had been recorded on an earlier date. The court also notes that defendant's baptism record was signed by a priest, and his school record by the school director. Such documents provide external corroboration of defendant's birth date being November 30, 1981, and the court must give some weight to these signatures attesting to the information contained in the documents.

Not a single piece of evidence reviewed in this opinion concerning the date of de-

---

6. The court recognizes that this statement is rank hearsay; however, given the difficult issue before the court and the unconventional evidence received at the hearing, the court will take this statement into consideration with all the other evidence received.

fendant's birth is entirely reliable, each having its own individual failings as noted above by the court. While such evidence may not be admissible in the context of a trial, for purposes of this proceeding the court has no choice but to choose the most reliable evidence and determine defendant's date of birth. The court's review of this evidence leads to the conclusion that defendant was born on November 30, 1981, as he now contends.

## CONCLUSION

Given the lack of definitive proof regarding defendant's date of birth, the court has relied on unconventional records in concluding that the preponderance of the evidence establishes his date of birth as November 30, 1981. This finding shall be certified to the Eighth Circuit Court of Appeals as requested in the remand order dated May 28, 1999.