**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alejandro CEJA–PRADO,**
**Defendant–Appellant.**

**No. 01–30443.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 2003.

Filed June 25, 2003.

William C. Broberg, Seattle, WA, for the Defendant–Appellant.

John McKay, United States Attorney; Douglas J. Hill, Special Assistant United States Attorney; and Helen H. Brunner, Assistant United States Attorney, Tacoma, Washington, for the Plaintiff–Appellee.

Before REINHARDT, W. FLETCHER, and GOULD, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

On April 26, 2001, a man claiming to be Alejandro Ceja–Prado was arrested and charged with entering into a conspiracy to sell methamphetamine. Ceja–Prado pled guilty to the offense, and was sentenced to 151 months of imprisonment with three years of supervised release. Although Ceja–Prado testified during his plea colloquy that he was twenty-one when the crime was committed, he now presents evidence purporting to establish that he was a juvenile at the time of the crime. If this is true, there is presently, and was at the time of the conviction, no federal jurisdiction over Ceja–Prado's case. The Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 *et seq.,* provides that federal courts have no jurisdiction over certain prosecutions for acts of juvenile delinquency unless the cases have been certified for prosecution by the Attorney General or his specified representatives, and no such certification has been lodged in this case. Because every federal court has a continuing obligation to ensure that it possesses subject-matter jurisdiction, we remand for an evidentiary hearing on the jurisdictional facts put in question by the newly presented evidence.

## I

The defendant, who presented himself as Alejandro Ceja–Prado until the present appeal, is a Mexican national who entered the United States several years ago. On April 26, 2001, Ceja–Prado and a co-defendant attempted to sell methamphetamine to an undercover officer, and were arrested and charged with conspiracy to distribute, distribution, and possession with intent to distribute methamphetamine, and carrying a firearm during and in relation to a drug trafficking crime. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 846; 18 U.S.C. §§ 2, 924(c)(1)(A)(i). On September 10, 2001, pursuant to a revised information charging only the conspiracy count, Ceja–Prado entered a guilty plea. During Ceja–Prado's plea colloquy, the district judge twice asked his age, and

consistent with the November 14, 1979, birthday that he reported to his arresting officers, Ceja–Prado twice replied that he was "[t]wenty-one." At his sentencing hearing three months later, after his purported birthday, Ceja–Prado was asked if he was twenty-two years old, to which he replied, "Yes."

Ceja–Prado timely appealed his conviction and sentence, and on May 17, 2002, he filed a motion for remand to the district court.[1] In the motion papers, Ceja–Prado asserted for the first time that he is not *Alejandro* Ceja–Prado, who was age twenty-one at the time of the crime, but rather *Javier* Ceja–Prado, who was only sixteen years old at that time. The motion addressed only Ceja–Prado's identity and age; in it, the defendant did not deny that he is the person who committed the acts set forth in the revised information.

Ceja–Prado now insists that he is Javier, that he had been using his older brother Alejandro's identification papers in order to find work in this country, and that he showed these papers to the arresting officers. He did not disclose his true identity prior to this appeal, he contends, because he feared the consequences of his use of false identification, and did not understand the special procedural protections afforded juveniles. Now, however, he presents several documents purporting to establish that he is Javier and was a juvenile at the relevant time: an authenticated birth certificate establishing that Javier Ceja–Prado was born on December 25, 1984; sworn declarations from family members attesting to his "true" identity and date of birth; an authenticated picture of Alejandro Ceja–Prado; and an authenticated picture of himself. Ceja–Prado also points to evidence that a government informant involved in the arrest knew him as "Javier," not as "Alejandro."

■ Whether Ceja–Prado is Javier or Alejandro, and whether he was a juvenile or an adult at the time he committed the crime, are factual questions, the answers to which may compel the conclusion that the district court lacked jurisdiction to accept his plea. The Federal Juvenile Delinquency Act (the "Act") prescribes special procedural protections for a juvenile who allegedly commits an act of juvenile delinquency—an act undertaken "prior to his eighteenth birthday which would have been a crime if committed by an adult," 18 U.S.C. § 5031. These protections include a procedural prerequisite for prosecution in federal court: such juveniles "shall not be proceeded against in any court of the United States" unless the Attorney General or certain other federal officials follow the certification procedures required by 18 U.S.C. § 5032. We have squarely held that this certification process is a jurisdictional requirement. *United States v. Doe,* 170 F.3d 1162, 1165 (9th Cir.1999).

If Ceja–Prado was in fact born on December 25, 1984, the Act—and its jurisdictional certification requirement—applies to his prosecution. It is undisputed that no such certification occurred in this case. Therefore, if Ceja–Prado's assertion is factually correct, the district court had no jurisdiction to proceed with his case, and the conviction must be vacated.

## II

Whether a criminal defendant may present evidence on appeal that, if true, would establish that the district court lacked jurisdiction over his case—even though in the district court he represented the facts to be to the contrary, thus leading the court

---

1. On June 27, 2002, the Ninth Circuit Appellate Commissioner denied the motion without prejudice to its later renewal. At oral argument, Ceja–Prado renewed it.

to believe that jurisdiction existed—appears to be an issue of first impression in any circuit. We recognize at this point that Ceja–Prado has falsely represented his age, either to us or to the district court, and we unequivocally state that we do not sanction this conduct. Moreover, we appreciate the oddity of considering, at this late stage, evidence not presented to the trial court.[2] Nevertheless, because this evidence raises a "serious question" regarding the existence of federal jurisdiction—the absence of which we may not simply ignore—we remand for an evidentiary hearing to determine Ceja–Prado's true age.[3]

■ Under these circumstances, our obligation to investigate and ensure our own jurisdiction overrides the equitable or jurisprudential considerations that might otherwise prevent Ceja–Prado from raising new and contradictory evidence at this point. We have repeatedly recognized that federal jurisdiction cannot be created by the parties through waiver or through estoppel, in cases in which jurisdiction otherwise does not exist. It is clear, for example, that this court has a continuing obligation to assess its own subject-matter jurisdiction, even if the issue is neglected by the parties entirely or raised for the first time on appeal. *See Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir.1999) ("[W]e have an independent obligation to

address sua sponte whether this court has subject-matter jurisdiction."); *see also In re Sealed Case*, 131 F.3d 208, 210 (D.C.Cir.1997) (reviewing the propriety of jurisdiction under the juvenile certification requirement, when the issue was raised only at oral argument). Similarly, courts have not allowed jurisdiction to depend on either malfeasance or well-intentioned agreement of the parties. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." (internal quotation marks and citations omitted)); *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 885 (9th Cir.2003) ("A party may not engage in manipulation either to create appellate jurisdiction or prevent it."); *Hajek v. Burlington N. R.R. Co.*, 186 F.3d 1105, 1107–08 (9th Cir.1999) ("Because[the plaintiff] did expressly consent to the magistrate judge's exercise of authority up until the magistrate judge ruled against him, there would be some attractiveness to the notion of an estoppel, were that appropriate. But it is not. A party cannot estop itself into jurisdiction where none exists."); *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 n.

---

**2.** The government cites *United States v. Frasquillo–Zomosa,* 626 F.2d 99 (9th Cir.1980), for its statement that the age of a potential defendant must be established at an early stage in the proceedings. *Id.* at 102. *Frasquillo–Zomosa,* however, is only tangentially related to this case. *Frasquillo–Zomosa* held that, once jurisdiction over a juvenile had been *established,* his age was not an essential element of a delinquency charge that had to be proven beyond a reasonable doubt at trial. *Id.* The case in no way concerned the proper disposition of a claim that the defendant's true age precluded federal jurisdiction.

**3.** The documents presented on appeal were never presented to the district court. In a case in which a party attempts to present on appeal evidence that the district court has evaluated and refused to credit, we would naturally afford the district judge's determination the normal deference that is due factfinding in the trial court. Here, it is precisely because the judge has not yet had the opportunity to weigh the relevant evidence that we remand the case for an evidentiary hearing.

1 (9th Cir.1993) ("The parties cannot ... create federal court subject matter jurisdiction by stipulation."); *Richardson v. United States,* 943 F.2d 1107, 1113 (9th Cir.1991) ("Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of waiver and estoppel do not apply."). When it appears that facts may establish that the court has no jurisdiction to hear a case, we have recognized that we will not permit a party's improper conduct to interfere with our own obligation to acknowledge those facts.

Instead, when it has come to the attention of the court that there exists a "serious question" regarding the factual predicate for subject-matter jurisdiction, we have remanded for a finding to resolve the jurisdictional question. *See, e.g., Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1091 (9th Cir.2003) ("We cannot consider the merits of the appeal before assuring ourselves that the district court had jurisdiction. For that reason, we remand this matter to the district court for a determination of whether the amount in controversy is sufficient to establish jurisdiction."); *cf. United States v. Williams,* 442 F.2d 1039, 1039–40 (2d Cir.1971) (remanding for a determination of jurisdictional facts, even though the issue was raised for the first time on appeal). In a similar case of belatedly asserted juvenile status, the Eighth Circuit followed precisely this procedure, which was described in *United States v. Salgado–Ocampo,* 50 F.Supp.2d 908 (D.Minn.1999). After a jury found Salgado Ocampo guilty of various drug trafficking offenses, he alleged for the first time on appeal that he had given a false birthdate to federal agents, the court, and his probation officer; in reality, Salgado Ocampo claimed, he was three years younger than he had previously asserted and was therefore a juvenile at the time of the crime. *Id.* at 909. In response to the factual dispute concerning a predicate for the district court's jurisdiction, the Eighth Circuit remanded "for the limited purpose of conducting an evidentiary hearing to resolve the issue of defendant's age." *Id.* at 909. As it happened, the Eighth Circuit's concern was justified; after the evidentiary hearing, the district court concluded that Salgado Ocampo was in fact a juvenile at the time of the crime, *id.* at 913, and as a result, the court was deprived of jurisdiction.

■ We acknowledge that our disposition of two diversity cases suggests that there may be an exception to the general rule requiring us to investigate serious questions of fact affecting our jurisdiction no matter when they arise. In *Albrecht v. Lund,* 845 F.2d 193 (9th Cir.1988), and *Schnabel v. Lui,* 302 F.3d 1023 (9th Cir. 2002), the civil party losing its case at trial belatedly attacked the court's diversity jurisdiction by asserting purportedly new facts on appeal. We held that, absent any basis for a substantial question regarding diversity in the materials before the district court, we "need not remand" for further factfinding. *Albrecht,* 845 F.2d at 194–95.[4] Despite the general principle that jurisdictional concerns trump equitable considerations, there may be strong policy reasons for applying some theory of estoppel in the diversity context, in order

4. *Schnabel* devoted only one sentence to explaining its rationale for refusing to consider new facts affecting the court's jurisdiction; *Albrecht's* discussion is confined to a parenthetical. *Schnabel,* 302 F.3d at 1033 ("Once a diversity case has been tried in federal court ... considerations of finality, efficiency, and economy become overwhelming." (internal quotation marks and citation omitted)); *Albrecht,* 845 F.2d at 195 ("*See O'Campo v. Hardisty,* 262 F.2d 621, 624 (9th Cir.1958) (failure to deny the facts alleged in a removal petition constitutes an admission of those facts).").

to prevent parties from deliberately manipulating our exercise of jurisdiction [5]— for example, by gambling on a favorable verdict and then, after losing, presenting facts depriving the federal courts of jurisdiction.[6]

If so, we would not extend any such diversity exception beyond its present bounds, or to any other category of cases. Certainly, the policy reasons that might support a diversity exception are not applicable to federal criminal cases, much less to criminal pleas from which convictions necessarily follow. Criminal defendants ordinarily have no incentive to foist jurisdiction on the federal courts in order to be able to plead guilty. More generally, only in the rarest of cases will a criminal defendant believe that he will benefit from misleading a federal court into concluding that it has jurisdiction over the charges against him. There is, indeed, little conceivable reason that any defendant would want to subject himself unnecessarily to the tender mercies of the federal criminal justice system, with its mandatory minimum sentences and harsh sentencing guidelines. Even more rarely will any such defendant subsequently change his mind and present the true jurisdictional facts on appeal. It is, in part, for this reason that we are faced here with a question of first impression.

■ In light of the above, we would not abandon, even if we could, the firmly established principle that we have an obligation to ensure our own jurisdiction when serious questions regarding the validity of that jurisdiction arise. "Nothing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. Without jurisdiction it is nothing." *In re Mooney,* 841 F.2d 1003, 1006 (9th Cir.1988), *overruled on other grounds by Partington v. Gedan,* 923 F.2d 686 (9th Cir.1991) (en banc). If it comes to the attention of the court that there exists a "serious question" regarding the factual predicate for subject-matter jurisdiction in a federal criminal case, we must resolve the jurisdictional dispute before progressing further.

■ The evidence accompanying Ceja–Prado's motion for remand creates such a "serious question" in this case. If credited, the evidence may be sufficient to establish that the Ceja–Prado who pled guilty was a juvenile at the time of the alleged crime, and that because certification was lacking, federal jurisdiction did not exist to take his plea. To fulfill our obligation to ensure our own jurisdiction, we therefore remand this case to the district court for a determination of Ceja–Prado's true age. If Ceja–Prado was younger than eighteen at the time of the crime, we direct the district court to vacate his conviction and dismiss the information without prejudice, for lack of federal jurisdiction. *See United*

---

**5.** Other courts have imposed monetary sanctions in order to punish and deter efforts to manipulate jurisdiction. *See, e.g., Itel Containers Int'l Corp. v. P.R. Marine Mgmt., Inc.,* 108 F.R.D. 96 (D.N.J.1985).

**6.** *But see Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (asserting, when a diversity defendant disclosed for the first time on the third day of trial facts establishing a lack of jurisdiction, that "the asserted inequity in the respondent's alleged concealment of its citizenship is irrelevant [because f]ederal judicial power does not depend upon prior action or consent of the parties" (internal quotation marks omitted)); *but cf. Attorneys Trust v. Videotape Computer Prods., Inc.,* 93 F.3d 593, 595 (9th Cir.1996) ("Of course, [a] party may raise jurisdictional challenges at any time during the proceedings. *That includes a disappointed plaintiff."* (emphasis added) (citing *Albrecht,* 845 F.2d at 194) (internal quotation marks and citations omitted)).

*States v. Doe*, 98 F.3d 459, 461 (9th Cir. 1996). Otherwise, this panel will retain jurisdiction over all further proceedings.[7]

**REMANDED.**

---

**7.** Despite the potential loss in judicial economy, we may not decide the merits of Ceja–Prado's appeal before the jurisdictional issue is resolved. *See Steel Co.,* 523 U.S. at 100–02, 118 S.Ct. 1003.