15-3680 (L)
*United States v. Geraldo*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of April, two thousand seventeen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> ROSEMARY S. POOLER,
> GERARD E. LYNCH,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                            Nos.    15-3680(L)
> > 15-3976(CON)
> > 15-4042(CON)

MANUEL GERALDO, HARGELIS VARGAS, JUGO CESPEDES,

> *Defendants-Appellants*,

LEONIDES SIERRA, AKA Sealed Defendant 1, AKA Junito, AKA Junior, RICHARD GONZALEZ, AKA Sealed Defendant 2, AKA Webb, AKA Webb Killa, JOSE CRUZ, AKA Sealed Defendant 3, AKA Prostituto, AKA Prosti, CARLOS URENA, AKA Sealed Defendant 4, AKA Salcedo, AKA White Boy, EDWIN CIRIACO, Sealed Defendant 5, AKA Machete, AKA Bobie,

1

ANIBAL RAMOS, AKA Sealed Defendant 6, AKA Moreno, ALFRED LAFORD, AKA Sealed Defendant 7, AKA Sony, ANTONIO PENA, AKA Sealed Defendant 8, AKA La Percha, JULIO BRITO, AKA Sealed Defendant 9, AKA Fresh, JUAN NUNEZ, AKA Sealed Defendant 10, AKA Jesu Christo, CHRISTOPHER JOHNSON, AKA Sealed Defendant 11, AKA Chris, DONALD NOVAS, AKA Sealed Defendant 12, AKA Oliver, AKA Soca, AKA Vale, AKA Fish, JOSE FELICIANO, AKA Sealed Defendant 13, AKA Lito, FELIX LOPEZ-CABRERA, AKA Sealed Defendant 14, AKA Suztancia, CARLOS LOPEZ, AKA Sealed Defendant 15, AKA Carlito, JOSE MARMELEJOS, AKA Sealed Defendant 16, AKA Ochenta, NOEL ACOSTA-DISLA, AKA Sealed Defendant 17, AKA Fugitivo, TOMAS CASTILLO, AKA Sealed Defendant 18, AKA Chobolo, AKA Chobolito, AKAHUGO ALMONTE, AKA Sealed Defendant 19, AKA Fufu, CESAR ALMONTE, AKA Sealed Defendant 20, AKA Bullet, CARLONELL PAULINO, AKA Sealed Defendant 21, AKA Pope, RONALD PERALTA, AKA Sealed Defendant 22, AKA Romo, JOSE CASTILLO, AKA Sealed Defendant 23, AKA Smith, AKA Jay Blanco, AKA Daddy, MARK MARTINEZ, AKA Sealed Defendant 24, JOSE BALLENILLA, AKA Sealed Defendant 25, AKA Correa, LUIS BELTRAN, AKA Sealed Defendant 26, AKA Gualey, LUIS CABRERA-RECIO, AKA Sealed Defendant 27, AKA Nueve, AKA Nuevecito, LOREN GUZMAN, AKA Sealed Defendant 28, AKA Crispy, MELVIN AMPARO, AKA Sealed Defendant 29, AKA Flynt, JONATHAN MAJDANSKI, AKA Sealed Defendant 30, AKA Indio, MIGUEL STRONG, AKA Sealed Defendant 31, AKA Kiki, JOSE BARCARER, AKA Sealed Defendant 32, AKA Papotico, AKA Basura, JOSE GERONIMO-FIGUEROA, AKA Sealed Defendant 33, AKA Mocha, EDGARDO PONCE, AKA Sealed Defendant 34, AKA Tito, MICHAEL DELACRUZ, AKA Sealed Defendant 35, AKA 40, DAVID PATINO, AKA Sealed Defendant 36, AKA Bori, AKA Chingo, EDUARDO HOLGUIN, AKA Sealed Defendant 37, AKA James Baston, RONNY EVANGELISTA, AKA Sealed Defendant 38, LUIS CABRERA, AKA Sealed Defendant 39, AKA Bling Bling, MR. CARLOS RODRIGUEZ, AKA Sealed Defendant 40, HENRY O. PENA, AKA Sealed Defendant 41, AKA Melmo, DAVE MCPHERSON,

2

AKA Sealed Defendant 42, VANCE HILL, AKA Sealed
Defendant 43, AKA Shata, GREYDIN LIZ-CASTILLO,
AKA Sealed Defendant 44, AKA Pollito, NELSON
JORGE-MARTINEZ, AKA Sealed Defendant 45, AKA
Chico Chico, LUIS SALADIN, AKA Sealed Defendant
46, AKA King, CHRISTOPHER ROBLES, AKA Sealed
Defendant 47, AKA Dorita, JOSEPH HERNANDEZ,
AKA Sealed Defendant 48, JONATHAN
EVANGELISTA, AKA Sealed Defendant 49, HENRY
PAULINO, AKA Sealed Defendant 50, AKA Bam Bam,
JUAN FRANCO, LIMET VASQUEZ, ALEJANDRO
SORIANO, LENIN MOREL, RAMON LIZARDI,
LEWIS SANTOS, MIGUEL DELANCE, MARIA
MEJIA, JOSE MEJIA, JAVIER BELTRAN, MICHAEL
CABRERA, JULIAN LOPEZ, AKA Kulian Lopez,
CHRISTIAN NIEVES, YANDEL SILVERIO,
VLADAMIR DIAZ, ANDRY LAZALA, RAYMOND
SOSA, JOAN VASQUEZ, ARGENIS GUILLEN,
HERIBERTO MARTINEZ, ANDY CIPRIAN, ALBERT
SALCE, ANDERSON ABREU,

> *Defendants*.

---

| | |
|---|---|
| For Appellee United States: | MATTHEW LAROCHE, Sarah Krissoff, Margaret Garnett, Assistant United States Attorneys, Of Counsel, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant Manuel Geraldo: | GARY S. VILLANUEVA, Law Office of Gary S. Villanueva, New York, NY. |
| For Defendant-Appellant Hargelis Vargas: | JOHN A. KUCHERA, Waco, TX. |
| For Defendant-Appellant Jugo Cespedes: | JAMES M. BRANDEN, Law Office of James M. Branden, New York, NY. |

Consolidated appeals from final judgments of the United States District Court for the

Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court is **AFFIRMED** as to defendants-appellants Geraldo and Cespedes, and **REMANDED** as to defendant-appellant Vargas.

Co-defendants-appellants Manuel Geraldo, Hargelis Vargas, and Jugo Cespedes (collectively, "defendants") appeal from sentences and final judgments of conviction entered on October 30, 2015, November 25, 2015, and December 3, 2015, respectively, each by the United States District Court for the Southern District of New York (Engelmayer, *J.*). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Each of the three defendants pleaded guilty to Count Two of the Superseding Indictment, which charged them with participating in a racketeering conspiracy as members of the Bronx Trinitarios Gang in violation of 18 U.S.C. § 1962(d). All three admitted that they participated in the March 19, 2010, murder of Orlando Salgado; Geraldo and Cespedes also acknowledged participating in the September 23, 2010, shooting and stabbing of members of a rival gang; and Cespedes additionally admitted to participating in the March 27, 2010, murder of Richard Canela. Prior to sentencing, the district court conducted a *Fatico* hearing, *see United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to determine whether the Salgado murder constituted a first- or second-degree murder for the purposes of calculating each defendant's adjusted offense level under the Guidelines. The court concluded that, while it was a close question, the murder of Salgado was most appropriately considered a second-degree murder. In preparation for each defendant's sentencing hearing, the Probation Office calculated that all three defendants had Criminal History Categories of I. In addition, the Probation Office calculated that Vargas's total offense level was 35 with a Guidelines range of 168 to 210 months' imprisonment, and Cespedes's total offense level was 38 with a Guidelines range of 235 to 293 months. Although

4

the Probation Office calculated that Geraldo's total offense level was 36 with a Guidelines range of 188 to 235 months, the court at sentencing found that Geraldo's total offense level was 37 with a Guidelines range of 210 to 262 months, consistent with the parties' stipulation regarding the appropriate Guidelines calculation. On October 29, 2015, the court sentenced Geraldo principally to 320 months' imprisonment. On November 24, 2015, the court sentenced Vargas principally to 210 months' imprisonment. On December 2, 2015, the court sentenced Cespedes principally to 420 months' imprisonment. Each defendant has timely appealed his sentence.

On appeal, Geraldo contests both the procedural and the substantive reasonableness of his sentence, while Cespedes contests only the substantive reasonableness of his sentence. We review both the procedural and substantive reasonableness of a district court's sentence for abuse of discretion. *See United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008).

Vargas's appeal is more complicated. In the course of challenging his sentence on appeal, Vargas has raised a serious question as to whether the district court properly exercised subject-matter jurisdiction over his case. In fairness to the district court — which at all times conducted proceedings with great care and thoroughness — we note that this issue was first raised in Vargas's Reply Brief on appeal. Parties may not waive subject matter jurisdiction, however, so "it is our obligation to raise the matter of subject matter jurisdiction '*whenever* it appears from the pleadings or otherwise that jurisdiction is lacking.'" *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009) (quoting *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir. 1967)). Accordingly, we must first be assured that the district court properly exercised jurisdiction over Vargas's case before the considering merits of his appeal.

## I. Geraldo's Procedural Unreasonableness Challenge

As to Geraldo's procedural unreasonableness claim, a district court commits procedural error when, *among other things*, it "fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). In addition, the sentencing judge must "state in open court the reasons for its imposition of [a] particular sentence." 18 U.S.C. § 3553(c). Geraldo argues on appeal that "the sentencing court refused to consider appellant's persistent disability and, more importantly, its impairment of his judgment." Geraldo Br. 22. Contrary to Geraldo's contention, the sentencing judge did consider and discuss the significance of Geraldo's learning disability. He noted that "some degree of ADHD and related learning disabilities" were among the "real challenges in [Geraldo's] life" that provided "valuable context. . . . [that] helps me understand why [Geraldo] joined the gang." Geraldo App. 280–81. However, the sentencing judge found that those factors were outweighed by the "seriousness of [Geraldo's] offense, the savage murder of an innocent man, followed not by refraining from violence, but by other acts of violence including an attempted murder in which [he] did the stabbing." *Id.* at 284. The sentencing judge carefully considered the factors set forth in Section 3553(a) in the court's sentencing explanation, which spans over fifteen pages of the hearing transcript. On these bases, we conclude that Geraldo's sentence was not procedurally unreasonable.

## II. Geraldo's and Cespedes's Substantive Unreasonableness Challenge

Both Geraldo and Cespedes also argue that their sentences were substantively unreasonable. Vacating a sentence on appeal because it was substantively unreasonable is appropriate "only in exceptional cases where the trial court's decision 'cannot be located within

the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). In imposing an above-Guidelines sentence, the trial court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. . . . [A] major departure should be supported by a more significant justification than a minor one." *Gall v. United States*, 552 U.S. 38, 50 (2007).

As to the substantive reasonableness of Geraldo's sentence, Geraldo argues that the sentencing court's "proffered justifications for its disproportionate variance are either unsupported by the record or insufficient to locate the case outside the heartland." Geraldo Br. 26. In the sentencing judge's *Fatico* opinion, however, the judge found by a preponderance of the evidence that the Salgado murder was "brutal" and "plainly indicative of a premeditated attack," that Geraldo had participated in murdering Salgado, and that Geraldo had subsequently boasted to others that he had stabbed Salgado to death. Geraldo App. 95. Although the sentencing judge acknowledged that the deterrent benefit of incapacitation "somewhat diminishes the older [Geraldo] get[s]," Geraldo App. 280, the judge also recognized that Geraldo "kept on committing acts of violence," despite being "well aware that [he] could get caught, arrested and prosecuted," as "other members of the gang" were "getting arrested and going to prison, but [he] kept on going." Geraldo App. 278. Given the very serious nature of the violent acts Geraldo admitted to committing as part of the racketeering conspiracy, Geraldo's sentence cannot be said to be substantively unreasonable.

Neither was Cespedes's sentence substantively unreasonable. On appeal, Cespedes primarily argues that the sentencing judge's above-Guidelines sentence was the result of improperly using as the "closest comparators" to Cespedes two co-defendants who were tried

7

and convicted of multiple murders and who received mandatory life sentences, instead of using Geraldo, whom Cespedes contends was more properly his closest comparator. However, the sentencing judge rightly recognized the crucial difference between the activities of Geraldo and Cespedes, insofar as the latter admitted to participating in a second murder only eight days after the Salgado murder. The second victim, Canela, was murdered essentially because Cespedes and other gang members "did not like the way a man . . . standing outside [a] store was looking at them, and so they approached him and started assaulting him." Cespedes App. 281 (quoting Cespedes PSR ¶ 101). Indeed, Cespedes stabbed the victim to death with such force that the blade of his knife broke from the handle in the process, and the victim was later found to have died from approximately ten stab wounds. In light of these findings and the mandatory life sentences imposed for the only other Trinitarios co-defendants to have been found responsible for multiple murders at the time of Cespedes's sentencing, Cespedes's above-Guidelines sentence cannot be said to be substantively unreasonable.

Cespedes also contends that his sentence is unreasonable because the district court improperly based his sentence on a disagreement concerning how the Guidelines' grouping rules would count the Canela murder. Although Cespedes purports to challenge the substantive reasonableness of his sentence on this basis, such an argument is typically one of procedural unreasonableness. *See, e.g., United States v. Natal*, 849 F.3d 530, 539 (2d Cir. 2017). In sentencing Cespedes, the district court varied upward in its sentence in part because the Canela murder added only one offense level to the Guidelines calculation. In the sentencing judge's view, that minor increase was insufficient to account for the fact that Cespedes committed a second murder very shortly after participating in the murder of Salgado. This amounts to a policy disagreement with the Guidelines, which is an appropriate reason to vary up or down from the

8

Guidelines recommendation. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Here, the sentencing judge carefully described his policy disagreement with the grouping rules and amply justified his reasons for finding the Guidelines recommendation insufficient on the facts of this case.

**III. Federal Subject Matter Jurisdiction over Vargas's Case**

Finally, in Vargas's Reply brief, Vargas contends that the only predicate acts in the record that establish Vargas's membership in the racketeering conspiracy — his participation in the Salgado murder and his acknowledgment of his awareness that some members of the Trinitarios gang sold drugs — both took place while he was a juvenile. If so, there is a serious question as to whether the district court properly exercised subject matter jurisdiction over his case, for the only predicate acts that establish Vargas's membership in the racketeering conspiracy would be acts of juvenile delinquency under the Juvenile Delinquency Act ("JDA"). *See* 18 U.S.C. § 5031. "[I]n cases where a defendant commits a crime before his or her eighteenth birthday and is under twenty-one at the time the juvenile information charging the crime is filed," the JDA requires either that the defendant's prosecution proceed as a juvenile prosecution — with a much attenuated regime of punishment — or that the district court formally transfer a juvenile defendant to adult status. *United States v. Ramirez*, 297 F.3d 185, 191 (2d Cir. 2002). Even where the defendant turns twenty-one during the pendency of the criminal proceedings, we have held that the JDA continues to apply. *Id.* at 191–92.

Because Vargas was under the age of twenty-one at the time he was charged with the racketeering conspiracy, if Vargas's plea did not establish his adult participation in the racketeering conspiracy, the district court would be required to comply with the JDA to exercise

jurisdiction over Vargas's case. As to that procedure, as we explained at length in *United States v. Wong*,

> an act of juvenile delinquency may not be prosecuted in a federal district court unless the Attorney General certifies to the court that: (1) state courts either do not have or refuse to assume jurisdiction over the juvenile; (2) the state does not have 'available programs and services adequate for the needs of juveniles;' or (3) the offense charged is a violent felony, or is one of several enumerated narcotics- and firearm-related offenses, and there is a substantial federal interest in the case or the offense to warrant the exercise of federal jurisdiction.

40 F.3d 1347, 1363 (2d Cir. 1994) (citing 18 U.S.C. § 5032).[1] When questioned at oral argument, the Government did not assert that the Attorney General had fulfilled any of those prerequisites to exercising jurisdiction, and neither we nor defense counsel could locate anything in the appellate record suggesting otherwise. *See* Oral Arg. at 13:15.

Here, the absence of the required certifications does not necessarily end the jurisdictional inquiry, however, because racketeering conspiracy is a continuing crime. As we recognized in *Wong*, "federal courts have jurisdiction over conspiracies begun while a defendant was a minor but completed after his eighteenth birthday." 40 F.3d at 1365. Nevertheless, the difficulty here is that the record does not clearly establish that Vargas ratified the racketeering conspiracy after his eighteenth birthday, on August 2, 2010. At Vargas's plea hearing, Vargas only admitted to the predicate acts of participating in the murder of Salgado on March 19, 2010, and that "[i]n March 2010, [he] was associated with the Bronx Trinitarios gang," and affirmed that he was "aware of the gang's activities selling drugs," specifically marijuana. Vargas Plea Hr'g 19–20. Although Vargas's PSR suggests that he may have been involved in burglaries with members of the

---

[1] Even in cases where the Attorney General submits this required certification, which confers jurisdiction upon the district court, the government may only proceed against the defendant as an adult (instead of as a juvenile who is entitled to additional procedural protections under the JDA) when the government moves to transfer the juvenile to adult status, which can be either mandatory or discretionary depending on the circumstances. *See Ramirez*, 297 F.3d at 191.

10

Trinitarios gang as late as 2012 (well after his eighteenth birthday), defense counsel objected to the inclusion of those crimes in the PSR, *see* Vargas PSR at 35, and as Vargas's counsel noted during oral argument, no documentation in the record on appeal supports Vargas's involvement in those crimes, and they were not included in the criminal history portion of Vargas's PSR. *See* Oral Arg. at 17:10; Vargas PSR ¶¶ 148–55. Moreover, the district court did not make any specific findings concerning the 2012 burglaries. For these reasons, the existing record on appeal does not permit us to conclude, based solely on the references in the PSR, that the alleged burglaries establish Vargas's continued participation in the conspiracy after turning eighteen.

However, we are not prepared to assume that Vargas's continued membership in the criminal enterprise may only be established by the commission of additional crimes after reaching the age of majority. A defendant's criminal liability for racketeering conspiracy does not depend on the commission of a predicate criminal act, *see Salinas v. United States*, 522 U.S. 52, 63–66 (1997), and a defendant's participation in a conspiracy is generally held to continue until the conspiracy ends or the defendant affirmatively withdraws from it, *see United States v. Salmonese*, 352 F.3d 608, 615 (2d Cir. 2003). At this juncture, however, we express no view as to whether those rules apply in the context of adult ratification of juvenile participation in a conspiracy, for we are not in a position to determine on the basis of the present record whether jurisdiction existed in this case on the theory that Vargas's participation in the charged conspiracy continued into his majority.

At this stage we believe this issue is best resolved by means of what is known in this Circuit as a *Jacobson* remand, in which we remand "partial jurisdiction to the district court to supplement the record on a discrete factual or legal issue while retaining jurisdiction over the original appeal." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v.*

11

*Pemex–Exploración Y Producción*, 832 F.3d 92, 115 (2d Cir. 2016); *see also United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994) (recognizing the authority of federal appellate courts to seek "supplementation of a record without a formal remand or the need for a new notice of appeal before the appellate panel acts on the supplemental record"). We direct the district court to take the necessary steps, which may include a hearing, to determine whether it properly had and retained jurisdiction over Vargas's case under the JDA. If the district court does not find by a preponderance of the evidence that Vargas's participation in the charged conspiracy continued after he turned eighteen, we direct the district court to vacate his conviction without prejudice for lack of federal jurisdiction. *See United States v. Ceja-Prado*, 333 F.3d 1046, 1051–52 (9th Cir. 2003).

We have considered all of Geraldo's and Cespedes's contentions on appeal and have found in them no basis for reversal. We have also considered Vargas's contention that his plea allocution violated Federal Rule of Criminal Procedure 11, and similarly find that argument to be without merit. For the reasons stated herein, the sentencing judgments of the district court as to Geraldo and Cespedes are **AFFIRMED**. As to Vargas's appeal, his sentence is **REMANDED** to the district court pursuant to *Jacobson*, with instructions to take the necessary steps, which may include a hearing, to determine whether it had and retained jurisdiction over Vargas's case under the Juvenile Delinquency Act. Upon resolution of that issue by the district court, either party may restore the matter to the active docket of this Court by letter, without filing a new notice of appeal. In the event either party seeks further action from this Court, the matter will be referred to this panel.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

12